RACINE ET AL. *v.* WHEELER

[No. 535, September Term, 1965.]

*Decided January 9, 1967.*

The cause was argued before HAMMOND, C. J., and MARBURY, OPPENHEIMER, McWILLIAMS and FINAN, JJ.

*William O. Goldstein,* with whom were *David Kimmelman* and *Harvey A. Blum* on the brief, for appellants.

*C. MacNair Speed* and *Frederick J. Green, Jr.,* with whom were *Lord, Whip, Coughlan & Green* on the brief, for appellee.

McWILLIAMS, J., delivered the opinion of the Court.

Late on a sunny October afternoon in 1963 Racine [1] was east-bound on Pulaski Highway (U. S. 40). About one-half mile be-yond the boundary line between Baltimore City and Baltimore County he came to the crest of a hill from which, with the sun at his back, he could see across the valley to the next crest, a distance of several miles. About 600 to 700 feet down from the crest Blum's Drive, 48 feet wide, connects with the south side of the highway. It does not, however, continue in a northerly direction beyond the highway. A stop sign controls access to the highway and it is conceded that one entering the highway from Blum's Drive is an unfavored driver. Racine lives in the area and he is familiar with this condition.

A 26 foot grassed median strip separates the eastbound lane from the westbound lane. Each of these lanes is divided by a broken white line into two 12 foot lanes. The posted limits are 40 miles per hour for automobiles, 35 miles per hour for trucks.

The appellee (Mrs. Wheeler) entered the highway from Blum's Drive intending to turn left and go west. The left rear of her car was struck by the left front of Racine's car which then went 216 feet further eastward, finally coming to rest fac-ing west, half on the shoulder and half on the surface of the outside (slow) lane. While traversing the 216 feet he struck the automobile of Mrs. Elsie Huber, which was eastbound in the slow lane, in the rear, sending it out of control across the 26 foot median strip where it capsized and then slid on its top clear across the two 12 foot westbound lanes, coming to rest on the macadam shoulder. Racine's suit ended in a jury ver-dict in favor of Mrs. Wheeler and from the ensuing judgment he has appealed.

Racine's version of what happened puts him, at the crest of the hill, in the center of the left (fast) lane. He was moving, he said, at about 35 to 40 miles per hour in a stream of traffic following, at 50 to 75 feet, the vehicle in front of him. There was a truck some 40 to 50 feet ahead of him in the slow lane moving at about the same speed. Just as the truck cleared Blum's Drive Mrs. Wheeler entered the highway. When he

1. The appellants are James T. Racine, to his own use and to the use of Maryland Hospital Service, Inc. and James T. Racine, Inc. to its own use and the use of New Hampshire Insurance Co.

first saw her the front of her car had reached the center of the highway. He didn't see her sooner because he couldn't see around the truck. He swerved left to the macadam shoulder but judging this to be a collision course he swung back to the right. He could not say whether, at the instant of collision, Mrs. Wheeler's car was moving or standing still. He thought the vehicles collided at a point two feet from the left side of the fast lane.

As Mrs. Wheeler tells it, before emerging from Blum's Drive she stopped at the edge of the highway. There was "a lull in the traffic." She could see as far as the crest of the hill and there was "no traffic coming." After moving across the eastbound lane she stopped in the crossover because of approaching westbound traffic. She said she had time enough to enter the westbound lane ahead of an approaching tractor-trailer but she waited because she was afraid there might be unseen swiftly moving traffic behind the tractor-trailer. Her car was 18 feet 4 inches long. Although the median strip is 26 feet wide, about 12 feet of it on the east side of the crossover is used as a left turn storage lane. She was aware of this, however, and she said she "used this lane to pull completely across." She "assumed * * * [she] was completely in" the crossover. She estimated she was stopped in the crossover for about "the time you would have to wait for a stop light" before she was struck. The collision, which she described as a "glancing blow," did not move her car.

Mrs. Elizabeth Reeger was on the front seat alongside Mrs. Wheeler. She estimated they were stopped in the crossover "in the neighborhood of 25 to 30 seconds" before the collision. She said Mrs. Wheeler's car did not move as a result of the collision but she did not know whether any part of the rear of the Wheeler car was "sticking out" into the eastbound fast lane. Neither Mrs. Reeger nor Mrs. Wheeler was injured.

Before Mrs. Huber entered the highway she saw the Wheeler car "sitting in the crossover." She saw a number of eastbound cars pass by and when traffic cleared she entered the highway and proceeded east. As she turned into the eastbound slow lane she observed a car "coming up over the hill" in the fast lane but she could not say it was Racine.

After Mrs. Huber entered the highway Miss Margaret Belschner drew up to the stop sign. She saw Mrs. Wheeler's car "sitting still" in the paved crossover. She looked to her left but the "oncoming traffic * * * was coming too fast," so she waited. She did not actually see the collision. She could not be certain how soon after she first saw Mrs. Wheeler the collision occurred but imagined it was "a couple of seconds." She was unable to say whether any part of Mrs. Wheeler's car "stuck out" into the fast eastbound lane.

Miss Belschner's passenger was Mrs. Pauline Litchfield. At the moment of collision she was looking eastward. She saw Racine's station wagon "go out of control." Next she saw "a red car [Mrs. Huber] tumbling over the highway, over the grass plot." She said the Wheeler car was "standing still" in the crossover when they arrived and that it was still there after the accident. Answering the cross-examiner she said, "Oh, my. The car was sitting in the crossway as we came up. I don't know if she was sticking out, if that is what you want me to say, and I don't know."

Corporal Kujawa of the Baltimore County Police was produced as a witness for Racine. He said when he arrived at the scene of the accident no portion of the Wheeler car was projecting into the eastbound fast lane. This seems to be confirmed by one of the photographs taken at the scene which shows the left rear of the Wheeler car to be just about tangent to the white line marking the left edge of the fast lane. He found tire marks in the grassed area of the median strip which continued for some distance into the crossover. He found no tire marks suggestive of a sideways movement (or any other movement) of the rear of the Wheeler car. He found dust and debris extending one foot into the fast lane and debris extending one foot into the crossover. At an earlier hearing he expressed an opinion that the point of impact was in the crossover. Later he thought it was anywhere from 2 to 12 inches into the fast lane. He said Racine's bumper was 8 inches outboard of the left wheel track.

## I.

The first of Racine's two contentions is that the trial judge

(Barrett, J.) committed reversible error when he instructed the jury in this wise:

> "However, if you find that the defendant stopped her vehicle in the crossover, but in such a position that the rear of her automobile extended into the travel portion of Route 40, and that the prior movement of her automobile was not a producing cause of the accident, then there was a duty imposed on the plaintiff to keep a reasonable lookout and to exercise reasonable and ordinary care and caution for his own safety."

He says there is no evidence to support an instruction which permits a finding that the Wheeler vehicle was stopped in the crossover and, at the same time, "sticking out" into the fast lane. He argues that our holding in *Munzert v. American Stores Company,* 232 Md. 97, 192 A. 2d 59 (1963) requires a reversal. We do not agree that *Munzert* is apposite to the case at bar. There we said the instruction was prejudicial because there was *no evidence* of contributory negligence. The situation is different here.

It is true, as Racine insists, that no witness said the Wheeler car was both stopped and "sticking out" at the moment of collision. But this does not mean that the jury had nothing upon which to base such a conclusion. Mrs. Wheeler testified she was stopped and her testimony was corroborated by Mrs. Reeger, Mrs. Huber, Miss Belschner and Mrs. Litchfield. That the collision occurred in the fast lane was emphatically stated by Racine himself. Corporal Kujawa's testimony and the photographs taken shortly after the accident lend substance to his statement. Since the jury is free to believe only a portion of the evidence of each side the synthesis apparently accomplished by the jury is simply a manifestation of its obvious function. *Maryland Chemical Company v. Monn,* 241 Md. 127, 215 A. 2d 731 (1966).

The comment of Chief Judge Soboloff in *Rea Construction Co. v. Robey,* 204 Md. 94, 100, 102 A. 2d 745 (1954) is especially pertinent to the factual conflict here present:

> "When the interplay of circumstances is susceptible of different interpretations by rational minds, the

problem is essentially one for the jury; the trial judge is not permitted to transform it into a question of law for his own determination. The choice between conflicting facts and the weighing and assessing of competing inferences radiating therefrom is the jury's province."

## II.

Racine next contends, assuming there is evidence that the Wheeler car was "sticking out" into the fast lane, he is nevertheless free from contributory negligence as a matter of law. Therefore, he argues, the trial judge erred when he added to the instruction above set forth the following:

"And if you further find that the plaintiff saw, or by the exercise of ordinary care, should have seen the rear of the defendant's vehicle projecting into his lane of traffic, and that the plaintiff failed to move from his path, when in the exercise of reasonable care he had the opportunity to do so, if the jury so finds, and he failed to do so, thereby striking the defendant's automobile, then you should find the plaintiff guilty of negligence directly contributing to the happening of the accident, and your verdict should be for the defendant."

We do not think the disposition of this appeal requires an historical review of the Boulevard Rule in respect of the rights and duties of the favored driver. An article entitled *Bothersome Boulevards* by John W. T. Webb, Esq., 26 Md. L. Rev. 111, 122 (1966) serves that purpose quite well. As Judge Prescott (later Chief Judge), writing for the majority in *Brown v. Ellis,* 236 Md. 487, 495, 204 A. 2d 526 (1964) said:

"The question in regard to contributory negligence presents a different picture. Appellant contends that he is within the boulevard rule on this issue as a matter of law. There can be little doubt that the decisions of this Court have jealously guarded and upheld the favored driver's right of way in boulevard cases. In fact, the Maryland decisions seem to go as far as any

of our sister States in upholding such rights of way. However, no decision of this Court has ever stated that such a favored driver has a complete and absolute right of way which relieves him of all duty to exercise reasonable and ordinary care for his own safety. On the contrary, this Court, as early as 1939, stated in *Greenfeld v. Hook,* 177 Md. 116 that 'the traveller on the favored highway [does not have] an absolute, unqualified, and complete right of way, at all times and under all circumstances, over persons who have lawfully entered the street, nor [can he] proceed thereon in blind indifference to the danger to which his progress may expose others,' but, 'where a traveller on a favored highway knows or should know that his progress will endanger a traveller entering the same from a restricted highway, he must exercise reasonable care to avoid injuring him.' "

The jury could have found from the evidence that the Wheeler car was "sticking out" into the fast lane 10 to 15 seconds before Racine came over the crest of the hill. Blum's Drive, it is conceded, is about 600 feet east of the crest and Racine's estimate of his speed was 35 to 40 miles per hour (51.1 to 58.4 feet per second). One perceives the quotient, 10 to 12 seconds, almost immediately. Whether the jury found from the evidence that the Wheeler car was "sticking out" 2 inches or 20 inches it was there to be seen and in either event the jury could have found that there was still available to Racine 2 to 3 feet in the fast lane in which he could have turned aside to avoid the collision. The jury could also have doubted the accuracy of Racine's estimate of his speed, in light of the absence of tire marks which might indicate a maximum application of brakes, the tire marks on the shoulder or grassed area and Mrs. Huber's statement that other cars safely passed by Mrs. Wheeler as well as Racine's statement that he was following a car (which apparently passed safely by Mrs. Wheeler) at a distance of 50 to 75 feet.

Having concluded his instructions to the jury the trial judge invited counsel into his chambers to discuss exceptions. Be-

cause Judge Barrett, during the discussion, said "there is evidence to support the fact that the car had been sitting there between twenty-five seconds and a full minute" Racine now argues that if the judge "had properly remembered the facts of the case" he would not have instructed the jury as he did. We think that counsel, perhaps, has overlooked Mrs. Wheeler's statement that she was stopped "at least the time that you would have to wait for a stop light." There are, of course, differences in the time cycle of automatic traffic signals but there must be many that show a red light for as long as 60 seconds. If that is what Judge Barrett had in mind, and quite likely it was, certainly his recollection of the facts is not so improper as to justify reversal.

What Judge Hammond (now Chief Judge) said in *Harper v. Higgs,* 225 Md. 24, 34, 169 A. 2d 661 (1961) can just as appropriately be said here:

> "We think the instant case presents one of those rare instances in which the conduct of the favored driver was properly subject to a jury's determination of its reasonableness and prudence under the circumstances."

*Judgment affirmed.*
*Appellants to pay the costs.*