507 A.2d 1160

**Robert W. GORMAN**

v.

**STATE of Maryland.**

**No. 898, Sept. Term, 1985.**

Court of Special Appeals of Maryland.

May 8, 1986.

José F. Anderson, Asst. Public Defender (Alan H. Murrell, Public Defender on brief), Baltimore, for appellant.

Ronald M. Levitan, Asst. Atty. Gen. (Stephen H. Sachs, Atty. Gen., Baltimore, Joseph I. Cassilly, State's Atty. for Harford Co. and Deidre W. Lee, Asst. State's Atty., for Harford Co. on brief, Bel Air, for appellee.

Argued before WILNER, GARRITY and BELL (ROSALYN B.), JJ.

GARRITY, Judge.

A jury in the Circuit Court for Harford County (Cameron, J., presiding) found Robert W. Gorman, the appellant herein, guilty of attempted escape from the Harford County Detention Center and malicious destruction of property. He received a sentence of ten years for the attempted escape and three years, concurrent, for malicious destruction of property.

He has presented the following issues for our review:
1. Was appellant denied his right to compel a witness to testify on his behalf?
2. Did the court err in refusing to strike certain jurors for cause?
3. Did the court err in limiting the scope of appellant's cross-examination?

4. Did the court err in admitting hearsay testimony?

## I. *Right to Compel Presence of a Witness*

The appellant, both in a Motion for Postponement and in a Motion for New Trial, complained that he was unable to pay for the transportation of a witness then incarcerated in a federal prison located in the State of New York. Both motions were denied. On appeal, Gorman asserts that he was denied his right to a fair trial because he was financially unable to compel the presence of that particular witness to testify in his behalf.

### A. *Motion for Postponement*

The record reflects that the appellant, who was indicted on March 4, 1984, had been in the Harford County Detention Center awaiting trial on a charge of robbery. By agreement between the appellant and the State, the trial in this matter had been postponed on numerous occasions until the completion of the robbery case. Finally, on January 21, 1985, after the appellant had been granted yet another postponement of the robbery trial, the court denied the appellant's request for postponement of the attempted escape trial.

After the jury had been impaneled on the scheduled date, appellant's assigned public defender moved for another postponement. Counsel explained that one of the appellant's witnesses, William Adkins, had been transferred to a federal penitentiary in New York State and that Gorman did not have sufficient funds to pay transportation costs. Defense counsel advised the trial judge that, although the court could issue a summons, the U.S. Marshall "will not honor that writ unless they receive a $1,000 check." Counsel further related that,

> while there are other witnesses who may testify similarly to Mr. Adkins, we have, quite candidly, a case where the guilt or innocence of the Defendant rests on specifically the evidence of convicted criminals, who are now or have in the past been in Harford County Detention Center and other facilities.... But as far as who was involved, it

rests solely on the testimony of three convicted criminals in the case of the State *and seven convicted criminals in the instance of the Defendant's witnesses.* And, therefore, while numbers are not supposed to mean anything, we're before a jury, your honor, and it seems to me each person who comes forth and testifies one way or the other is going to have the ability to persuade the jury one way or the other. (Emphasis added).

Defense counsel proffered that Adkins would testify that, for "part of the time" during the attempted escape, Gorman had been watching television and writing and that, "to his knowledge, Gorman was not involved in the plan of any escape." Adkins would also refute testimony concerning any threats made by Gorman to other witnesses "if such testimony came along."

In denying the motion to postpone, the court declared that "it's up to the Public Defender's Office to bring a federal witness in." Although, as the court explained, it would issue writs and summonses, the funds demanded by the federal authorities would have to come from some source other than the court. The court further found that, based on the proffer, Adkins's testimony would be cumulative.

The trial judge further observed that "if the entity that's representing the Defendant doesn't have the money to spend for a witness, that, I think, would be a post-conviction issue rather than trial." The assigned public defender responded by stating "I wanted to make sure the record would reflect the State entity prosecuting has the funds and we do not." [1]

### B. *Motion for New Trial*

Prior to sentencing, the appellant moved for a new trial. One of the grounds was that he was denied his right to compel the presence of a witness, specifically, Adkins.

---

1. As a practical matter, there was no proffer that a postponement would lead to the production of funds by the State through the court system, the State's Attorney's Office, or the Public Defender's Office.

In argument on the motion, the appellant's public defender advised the court that, "the Defendant didn't have these funds available to him (to cover transportation costs) and I might add, also, *the Public Defender's Office does not have the type of funds to expend on such witnesses.*" (Emphasis added).

In denying the Motion for New Trial the court again observed that:

> the Court can summons witnesses, but there's no responsibility on the part of the Court to pay for their attendance. You can bring in a witness from any institution in Maryland, but you can't bring them in from federal institutions unless somebody pays the bill.[2] It's a question of reasonableness. How far do you have to go? This particular witness doesn't appear to me to have been that vital to the Defense.

## C. *Discussion of Law*

The State does not dispute the appellant's contention that he had the right to compel the presence of a witness at trial. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967); *Darby v. State*, 47 Md.App. 1, 421 A.2d 108 (1980). Indeed, the trial judge acknowledged that he could issue a writ of *habeas corpus ad testificandum*, but agreed with defense counsel that the document would be of little utility without the attendant payment of transportation costs. On appeal, the State does not contend that it had no obligation to provide these costs. It recognizes that the Due Process Clause of the Fourteenth Amendment requires the States to provide reasonable costs for witnesses necessary to prepare an indigent's defense. *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). The State, however, vigorously challenges defense counsel's

---

**2.** The trial judge related that he was familiar with the payment policy and observed that "the federal authorities get many requests to transport their prisoners to state courts and elsewhere, and they have imposed the deposit requirement as a means of preventing frivolous transportations...."

statement that the Office of the Public Defender did not have sufficient funds available to cover transportation costs of Adkins from either New York State or Connecticut.[3] The Office of Public Defender, which also represents appellant on appeal, has apparently chosen not to respond to this challenge. Indeed, aside from the bald statement of counsel, there was no evidence whatever that the Office of Public Defender did not have sufficient funds to pay the U.S. Marshall's Office the transportation costs it required. Neither the public defender nor any administrative official of the public defender's office confirmed counsel's allegation.

*Ake v. Oklahoma, supra,* was a capital murder case in which the sole defense on the merits was insanity. The trial court denied a defense motion that psychiatric assistance be provided at State expense. The issue was whether the U.S. Constitution requires that an indigent defendant have access to psychiatric assistance necessary to prepare an effective defense based on his mental condition, when his sanity at the time of the offense is seriously in question. The Supreme Court answered that question in the affirmative.

Citing authority concerned with similar issues regarding funding of necessary costs for indigents to enable meaningful participation [4], Justice Marshall explained:

---

3. During argument on the Motion for Postponement, defense counsel advised that witness Adkins was in a federal institution located in New York State and that federal authorities required a $1,000 down payment to cover transportation costs. In argument on the Motion for New Trial, defense counsel advised the court that Adkins was incarcerated in a federal institution located in Connecticut and that federal authorities required a down payment of $1,500.

4. The Supreme Court cited authority such as *Griffin v. Illinois,* 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891 (1956) (transcript for indigent appellant); *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) (indigent entitled to assistance of counsel at trial); and *Douglas v. California,* 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963) (right to counsel on first direct appeal).

This Court has long recognized that when a State brings its judicial power to bear on an indigent defendant in a criminal proceeding, it must take steps to insure that the defendant has a fair opportunity to present his defense. This elementary principal, grounded in significant part on the Fourteenth Amendment's due process guarantee of fundamental fairness, derives from the belief that justice cannot be equal where, simply as a result of his poverty, a defendant is denied the opportunity to participate meaningfully in a judicial proceeding in which his liberty is at stake. 105 S.Ct. at 1093.

Justice Marshall went on to observe that:

Meaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse door does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. 105 S.Ct. at 1094.

It was the Court's view that fundamental fairness "entitled indigent defendants to 'an adequate opportunity to present their claims fairly within the adversary system' " and that the " 'basic tools of an adequate defense or appeal' " must be "provided to those defendants who cannot afford to pay for them." The Court went on to hold:

that when a defendant demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist

. . . .

*Id.* at 1097.

Following the Supreme Court's decision in *Coleman v. Alabama,* 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), which held that indigent criminal defendants were entitled to counsel at every "critical stage" of the proceedings, the Governor of Maryland called an emergency session to deter-

mine the steps necessary for compliance. *See* Joint Governor's Commission and Baltimore City Bar Association Report for the Study of Public Defender System for the State of Maryland (December 29, 1970). Significantly, the Report indicates that expenses pertinent to the matter *sub judice* were in fact considered. In calculating the projected cost of the proposed Public Defender's Act, the Commission included "[a]n estimated cost of $600,000 for technical and special fees (that) would include data processing, technical laboratory expenses, investigative costs, photocopying and *expenses incident to the appearance of witnesses.*" (Emphasis added). *Id.*, at 13, 90 S.Ct. at 2005. The Commission also proposed that indigents "be provided with the necessary services and facilities of representation, including investigation and other preparation ... at public expense ...." *Id.* at 20, 90 S.Ct. at 2009. The Commission's work served as the foundation of the Public Defender's Act. *See* Md.Code, Art. 27A.

■ Today, the pertinent Maryland law authorizes the public defender to pay an indigent's "expenses," which, by definition, include "all costs incident to investigation (and) other pretrial preparation." Art. 27A, § 2 & § 5. The Act further provides for the funding of these expenses within the State budget.[5] Art. 27A, § 13. While it is evident that the State of Maryland has provided the "mechanism" to secure funds on behalf of indigent criminal defendants to cover trial expenses, including transportation costs of needed witnesses, *Ake* teaches that, in an appropriate case, the mechanism must be used for the benefit of an accused. The mere fact that the "mechanism" to provide an indigent a fair opportunity to present witnesses on his behalf is in place, but denied to the defendant, is not enough to withstand constitutional scrutiny.

---

**5.** In "technical and special fees" for the Public Defender's Office, the State spent $3,149,763 in fiscal year 1984 and $3,470,327 in fiscal year 1985.

■ Although the State Public Defender has discretion over the expenditure of funds on behalf of his indigent clients, if it appears that such discretion has been abused, the matter may be appropriately considered in post conviction proceedings.

■ From the record before us, however, it is clear that witness Adkins was one of seven defense witnesses who would have "similarly testified" as to the appellant's non-involvement in the attempted escape incident. As the testimony of witness Adkins was cumulative, we hold that the trial court did not abuse its discretion in refusing to grant appellant's request for postponement or his motion for a new trial.

## II. *Selection of Jurors*

The appellant contends that the jury's composition precluded him from receiving a fair trial. Five members of the petit jury had previously advised the trial judge on their voir dire examinations that, although they were aware that prospective defense witness John Huffington had been convicted of murder charges which arose in Harford County, they could render a fair verdict. They were declared to be qualified and remained in the panel of prospective jurors.

Following completion of the voir dire by the court, in response to the appellant's request, the trial judge posed the following additional question about Huffington to members of the venire:

> Does anything you've heard, read or otherwise been informed about, would any of that cause you to give different weight to the testimony of that witness than you would someone else as a result of what you've read or heard about? If any of you would give different weight to that testimony, I'd like to hear about it up at the bench.

In response, a venireman advised the court that he would be unable to "buy" whatever Huffington might say on the

stand. He was struck for cause. No other member of the venire came forward in response to the question.

After the petit jury was selected, but prior to its being impanelled, the appellant, for the first time, contended that those jurors who had knowledge of the Huffington matter could not fairly decide the trial at issue and should be struck from the jury for cause. Counsel contended that he had attempted "through various means to get rid of each and every one of these jurors but was unsuccessful in doing so." The record does not support his contention.

According to the record, the appellant accepted four of the five jurors who had advised the court that they knew of the Huffington case. Additionally, the record reflects that the appellant utilized only three of his four peremptory strikes and advised the court, prior to the selection of alternates, that the jury was acceptable.

The appellant's argument fails for two reasons. The first is procedural; the second is substantive. First, the appellant failed to preserve this issue for our review. Second, even if he had, there is no indication that the court erred in seating the jury.

■ In two distinct ways, the appellant failed to raise the issue both for the trial judge to consider and for us to review. First, Maryland Rule 4–313(b)(3) expressly provides that "no challenge to the first 12 jurors shall be permitted after the first alternate juror is called." The appellant argued against the seated jurors only after the judge called the first alternate juror.

■ Second, the appellant did not exhaust his supply of peremptory challenges. Maryland Rule 4–313(a)(1) granted four peremptories to the appellant in the selection of the first 12 jurors. Gorman, however, used only three. Furthermore, while Maryland Rule 4–313(a)(3) grants two additional peremptory challenges in selecting alternate jurors, the Rule provides that the additional peremptories may only be used against alternate jurors. Additionally, the Rule expressly prohibits the peremptory challenges allowed to select the first 12 jurors from being used to strike alternate

jurors. Contrary to the appellant's understanding, he is not permitted to reserve use of a portion of his first set of peremptories in order to provide an additional supply of strikes when selecting alternate jurors. Indeed, even when "disqualification for cause is improperly denied, but the accused has not exercised all allowable peremptory challenges, there is no reversible error." *White v. State,* 300 Md. 719, 728, 481 A.2d 201 (1984); *see Parker v. State,* 227 Md. 468, 471, 177 A.2d 426 (1962); *Thomas v. State,* 50 Md.App. 286, 437 A.2d 678, *cert. denied,* 292 Md. 639 (1982).

 The trial judge has broad discretion in deciding whether to excuse a juror for cause, and the judge's decision in this matter should not be disturbed on appeal unless the juror's partiality or prejudice is manifest. Accord *Calhoun v. State,* 297 Md. 563, 468 A.2d 45 (1983); *King v. State,* 287 Md. 530, 414 A.2d 909 (1980); *Hopkins v. State,* 24 Md.App. 53, 66, 329 A.2d 738 (1974).

> A juror to be competent need not be devoid of all beliefs and convictions. All that may be required of him is that he shall be without bias or prejudice for or against the parties to the cause and possess an open mind to the end that he may hear and consider the evidence produced and render a fair and impartial verdict thereon.

*Calhoun v. State,* 297 Md. at 583, 468 A.2d 45 (1983), quoting from *Kujawa v. Baltimore Transit Co.,* 224 Md. 195, 201, 167 A.2d 96 (1961), quoting from *Garlitz v. State,* 71 Md. 293, 18 A. 39 (1889). It is for the judge to determine whether the juror is, as he may profess to be, without prejudice against the accused. We hold that the trial court properly denied appellant's motion to strike for cause those jurors who merely admitted knowing of Huffington's activities.

### III. *Limitation on Cross-Examination*

The appellant next contends that the trial judge erred in not allowing the defense to impeach a prosecution witness. The witness, Dennis Haines, had been in Harford County Detention Center during the alleged escape attempt. Haines testified that he had observed Gorman and Huffing-

ton cutting prison bars after the men had placed a book in front of a video camera. During cross-examination of Haines, the trial judge prevented defense counsel from putting into evidence Haines's twelve-year-old conviction for escape. Gorman argues on appeal, as he did below, that this evidence not only would have impeached the witness's credibility generally but also showed the witness's particular interest in testifying for the prosecution.

Since 1864, Maryland, through statute, has provided that evidence of a witness's past conviction for an "infamous crime" is admissible to attack the witness's credibility. Md.Code CJ § 10–905; *see Holmes v. State*, 63 ˙Md.App. 159, 492 A.2d 351 (1985); *Duckett v. State*, 61 Md.App. 151, 485 A.2d 691 (1985); *Burreli v. State*, 42 Md.App. 130, 399 A.2d 1354 (1979). In *Ricketts v. State*, 291 Md. 701, 436 A.2d 906 (1981), the Court of Appeals considered the meaning of "infamous crime" under the statute. Quoting from *Garitee v. Bond*, 102 Md. 379, 383, 62 A. 631 (1905), the Court explained that:

> The crimes which the common law regarded as infamous because of their moral turpitude were treason, felony, perjury, forgery and those other offenses, classified generally as *crimen falsi*, which impressed upon their perpetrator such a moral taint that to permit him to testify in legal proceedings would injuriously affect the public administration of justice.

*Ricketts v. State*, 291 Md. at 706–07, 436 A.2d 906.

In Maryland, the crime of escape is a statutory felony. Md.Code art. 27, § 139. It encompasses both the common law misdemeanor of "escape" (without any act of force) and "prison breach", a felony under the common law which involved escape by the use of force. Wharton's Criminal Law, § 665, torcia, 14th Ed. (1981). As the statutory offense of escape is a felony, it is admissible to impeach the testimony of a witness. It was thus error for the trial judge to exclude this evidence.

The error, however, was harmless. Haines testified that he was presently incarcerated in the federal penitentiary

serving a sentence on a theft conviction. He further advised the jury that he had been previously convicted of burglary and of another theft. Haines related that at the time of the attempted escape, he was being held on $75,000 bond at the Harford County Detention Center while awaiting trial on the federal charge. Also, Haines admitted that he decided to testify on behalf of the State when he overheard the appellant discuss with another inmate that they would implicate Haines in the escape attempt and thereby prevent consideration of his release on bond.

It is thus clear that Haines's testimony had been impeached. Any further impeachment evidence would not have affected the outcome of appellant's trial. Therefore, although the trial judge improperly prevented Gorman from placing before the jury evidence of Haines's prior conviction for escape, we hold that the error was harmless beyond a reasonable doubt. *See Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976).

### IV. *Hearsay Evidence*

Finally, the appellant contends that certain hearsay testimony should have been excluded. Specifically, Haines related to the court that after he had advised authorities of Gorman's threat to involve him in the escape attempt, John Huffington sent an emissary. This messenger apparently told Haines that Huffington would harm Haines's wife and children unless Haines were to "get amnesia." The appellant contends that this testimony constitutes prejudicial error requiring reversal.

This testimony by Haines, however, was given out of the presence of the jury and not repeated when the trial resumed. There is no merit to the appellant's contention that the testimony had any impact on the jury's verdict.

JUDGMENTS AFFIRMED.

COSTS TO BE PAID BY APPELLANT.