841 A.2d 31

Frederick James MOORE

v.

STATE of Maryland.

No. 1394, Sept. Term, 2002.

Court of Special Appeals of Maryland.

Jan. 28, 2004.

580

Julie M. Kazaks (Albert H. Turkus, Kenneth W. Gideon, W. Bradley Ney, on brief), Washington, DC, for appellant.

Diane E. Keller (J. Joseph Curran, Jr., Atty. Gen., on brief), for appellee.

Argued before DAVIS, JAMES R. EYLER, and WILLIAM W. WENNER (retired, specially assigned), JJ.

DAVIS, J.

Appellant Frederick James Moore was charged with first degree murder by an indictment filed on January 4, 2001 in the Circuit Court for Howard County. On January 16, 2001, private counsel entered his appearance on behalf of appellant. Subsequently, the State filed a notice to introduce Deoxyribonucleic Acid (DNA) evidence on March 7, 2001. Following discovery of the DNA evidence, appellant filed a motion for financial aid on November 20, 2001, requesting that the Office of the Public Defender (Public Defender) or Howard County pay for the services of a DNA defense expert. At a hearing held on January 14, 2002, the Public Defender announced that it refused appellant's request, citing that it was the policy of the Public Defender not to provide funds for experts in private counsel cases. Also at the hearing, Judge Raymond J. Kane, Jr., denied appellant's request for funding, stating that the court did not have any available funds. Appellant was subsequently tried by a jury in a five-day trial beginning on January 28 and ending on February 1, 2002. The jury convicted appellant of first degree murder and he was sentenced to life imprisonment on August 21, 2002.

Appellant filed his timely appeal on September 5, 2002, presenting three questions for our review, which we rephrase and combine into two questions as follows:

I.    Did the trial court err by denying appellant's motion requesting funding for a DNA defense expert on the grounds of indigency when appellant had retained and financed private counsel? [1]

---

1.    In his brief, appellant phrases his first two questions as "[w]hether the [c]ircuit [c]ourt's and Public Defender's refusal ..." The inclusion

II. Did the trial court err by excluding other crimes evidence of a separately tried and convicted co-defendant?

We answer appellant's questions in the negative and therefore affirm the judgment of the circuit court.

## FACTUAL BACKGROUND

On the night of November 2, 2002, appellant, Scott Brill, and a fourteen-year-old girl named Ashley Nicole Mason arrived at the home of Martise Stewart. While at Stewart's residence, an argument erupted among the three—with appellant and Brill in disagreement with Mason. The argument eventually became violent when Brill punched Mason in the face. Soon after the argument, appellant, Brill, and Mason left Stewart's residence in a small car, with appellant driving and Brill and Mason in the back seat. Several hours later, appellant and Brill returned to Stewart's residence. Appellant indicated to several individuals that he and Brill had killed Mason using a "buck knife" and put her body behind a Pizza Hut Restaurant. Also, appellant had blood smeared on his boots and legs and Brill had multiple lacerations on his arms.

The body of Mason was discovered on November 3, 2000, in a wooded area behind a Pizza Hut Restaurant, located in Howard County, Maryland. Police recovered several items at or near the crime scene and collected various evidentiary samples from the body of Mason. The State contracted with Cellmark Diagnostics, Inc. (Cellmark) to perform a DNA analysis of the collected items and samples and compare the results with the DNA profiles of both appellant and Brill. Cellmark concluded that Moore's DNA profile was present on some of the items and samples collected.

---

of the Public Defender implies that the scope of our review includes the actions of the Public Defender. As explained, *infra*, however, we do not review the actions of the Public Defender, but only the actions of the lower court. Therefore, the Public Defender has been omitted from the questions presented.

Appellant was indicted for the murder of Mason on January 4, 2001. Appellant did not apply to the Public Defender but instead privately retained Sheldon C. Mazelis, Esquire, to represent him. Mazelis entered his appearance on appellant's behalf on January 16, 2001. Appellant stated that he was able to pay for private counsel only because he recently acquired funds for physical injuries he received in a motor vehicle accident.

On March 7, 2001, the State filed its notice of intention to introduce DNA profile evidence at trial. Appellant requested and was eventually provided with the State's DNA materials. After receiving the materials, appellant paid $1,000 to a DNA expert for the purpose of analyzing Cellmark's results. The DNA expert provided a preliminary opinion regarding the testing methods used by Cellmark, but would not testify at trial without additional payment. Unable to pay for further services from the expert, appellant filed a motion on November 20, 2001, requesting that the Public Defender or Howard County provide financial aid for the testimony of his DNA expert. Although he still retained the services of private counsel, appellant claimed to be indigent. A hearing on the motion was held on January 14, 2002, at which appellant stated he was indigent but made no factual showing establishing his indigency. In response to appellant's motion, a member of the Public Defender's Office explained:

Upon discussion with [the State's Attorney] and upon reviewing the pleadings, I telephoned Mr. Mazelis and gave him the bad news, which is that the policy of the [Public Defender] is that we do not provide funds for experts in private counsel cases. That was my understanding of the policy. To confirm that, I telephoned the Deputy Public Defender.... That is the policy. They are not willing to make an exception.

The trial judge reviewed the budget of the court and concluded that it did not have available funds. As a result, the trial judge denied appellant's request by refusing to provide funding for his expert's testimony and by refusing to order the Public Defender to provide the funding. Appellant was subse-

quently tried without the testimony of his retained expert and convicted by a jury on February 1, 2002. On August 21, 2002, he was sentenced to life imprisonment. Appellant filed this appeal on September 5, 2002.

## LEGAL ANALYSIS

### *Appellate Review of Policy of Public Defender*

In his questions presented, appellant implies that we have authority to directly review the actions of the Public Defender. Appellant avers that the refusal of the Public Defender to provide a DNA expert violated his constitutional rights and the Public Defender Statute found in Maryland Code (1957, Repl.1997), art. 27A, resulting in an error that is reviewable in this appeal. Additionally, in his brief, appellant explicitly argues that "[t]he Public Defender's policy to deny aid to an indigent defendant is reviewable for abuse of discretion on direct appeal." He is wrong.

Our review focuses on the actions of the trial court and whether the court erred. "Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the *trial court.*" Md. Rule 8–131(a) (emphasis added). "The right of appeal exists from a final judgment entered by a *court* in the exercise of original, special, limited, statutory jurisdiction." Md.Code (2002 Repl. Vol), Cts. & Jud. Proc. (C.J.), § 12–301 (emphasis added). The Court of Appeals has stated:

> [T]he Constitution of Maryland makes it clear that the Court of Special Appeals may exercise only appellate jurisdiction.
>
> . . .
>
> That the exercise of appellate jurisdiction requires a prior action by some *judicial* authority, or the prior exercise of *judicial* power, has been regularly recognized by the courts of this country. And courts have held that review of the decision of an administrative agency is an exercise of original jurisdiction and not of appellate jurisdiction.

*Shell Oil Co. v. Supervisor of Assessments of Prince George's County,* 276 Md. 36, 42–43, 343 A.2d 521 (1975) (citations omitted).

The Public Defender is an executive agency and we do not directly review its discretionary decisions—to do so would be an exercise of original jurisdiction and outside the scope of our authority. If the Public Defender has abused its discretion, as appellant claims, by not providing funding for an expert witness, the matter is best left to post-conviction proceedings. As this Court noted: "Although the State Public Defender has discretion over the expenditure of funds on behalf of his indigent clients, if it appears that such discretion has been abused, the matter may be appropriately considered in post[-]conviction proceedings." *Gorman v. State,* 67 Md.App. 398, 407, 507 A.2d 1160 (1986). The Court of Appeals recently stated:

> We have explained on numerous occasions that a post-conviction proceeding pursuant to Maryland Uniform Post Conviction Procedure Act, Maryland Code, § 7–102 of the Criminal Procedure Article (2001), is the most appropriate way to raise the claim of ineffective assistance of counsel. The Act allows the convicted person to attack the judgment collaterally by challenging the legality of the conviction and incarceration in a separate evidentiary proceeding. A post-conviction proceeding, often called a "collateral proceeding," brought under the Act is not an appeal of the judgment; rather, it is a collateral attack designed to address alleged constitutional, jurisdictional, or other fundamental violations that occurred at trial.

*Mosley v. State,* 378 Md. 548, 558–560, 836 A.2d 678 (2003) (citations and footnotes omitted).

# I

Appellant avers that the public defender and the lower court violated Maryland's statutory framework providing legal aid to indigents and that his constitutional rights to due process of law, equal protection of law, and effective assistance of counsel were violated by denying the funding required for his expert

to testify. In response, the State asserts that any statutory or constitutional requirement to provide appellant funding for expert testimony is contingent upon indigency. Because appellant had retained private counsel, the State suggests that he could not be deemed indigent for purposes of any statutory or constitutional analysis. Moreover, the State contends that even if appellant could qualify as an indigent, he did not make a necessary showing to establish indigency.

Appellant's arguments are based on the assumption that he is indigent. In his brief, appellant states that his "indigency has never been controverted or even challenged." We agree with the State, however, that appellant's indigency is in question and that he must first establish that he was indigent in order to prevail under any statutory or constitutional arguments. Thus, we begin our discussion on the issue of appellant's indigency by addressing the State's suggestion that appellant could not be considered indigent because he had employed private counsel.

### A

In the instant case, appellant hired private counsel, who provided appellant with representation throughout his trial. Also, in an attempt to challenge the State's DNA evidence, appellant hired an expert to analyze the evidence and prepare a report setting forth his findings. Although the expert performed an analysis and prepared a report, he would not testify at trial without a further fee. Unable to make any additional payment to the expert, appellant claimed to be indigent and requested funds from the Public Defender's Office and the lower court in order to pay for the testimony of his expert. Appellant's ability to compensate private counsel, accompanied by his subsequent claim of indigency, presents us with a question of first impression in Maryland: whether a defendant, who has retained private counsel, can still be considered indigent for purposes of receiving funding for other services associated with legal representation, such as funding for an expert witness.

"Indigent" is defined in art. 27, § 2 as a person who "states in writing that he [or she] is financially unable, without undue hardship, to provide for the *full payment of an attorney and all other necessary expenses of legal representation.*" (Emphasis added.) Additionally, the Public Defender Statute bases eligibility for services on need. "Need" is defined in § 7(a): "Need shall be measured according to the financial ability of the person to *engage and compensate competent private counsel and to provide all other necessary expenses of representation.*" (Emphasis added.) Therefore, a defendant who demonstrates both an inability to "compensate competent private counsel" and to "provide all other necessary expenses of representation" clearly is considered indigent under the Public Defender Statute and is entitled to the full range of services provided for by the Public Defender. The more determinative question in this case, however, is whether a defendant who demonstrates an inability to fully pay for only one service, whether it be legal representation or the expense of necessary services associated with legal representation, can be considered indigent under the statute. In other words, can a defendant retain private counsel and yet claim to be indigent for purposes of associated legal services, thus allowing representation by the Public Defender to be severed from other services accompanying its legal representation, such as expert testimony?

As noted, *supra*, Maryland case law provides little guidance to aid us in determining if appellant was required to be without funds for both legal representation and other necessary expenses or if only his inability to pay for the DNA expert was sufficient to establish indigency under the Maryland's Public Defender Statute. We have uncovered decisions in other jurisdictions, however, in which defendants retained private counsel, but nevertheless attempted to obtain payment for other services under a comparable public defender's statute.

In *Morton v. Kentucky*, 817 S.W.2d 218 (Ky.1991), the Kentucky Supreme Court dealt with a defendant who paid

$100 to a private attorney to represent him. Thereafter, the defendant declared himself indigent, stating that he was "unable to provide any additional money for legal presentation or to afford expert witnesses to testify in his behalf ... to assure that (he received) his constitutional due process right to a fair trial." *Id.* at 219. The defendant's private counsel was willing to continue on a *pro bono* basis, but the lower court required the defendant's private counsel to withdraw and appointed the public defender as counsel. Following trial, the defendant appealed, arguing that he had been entitled to the benefits of Kentucky's public defender statute while retaining his private counsel. On appeal, the Kentucky Supreme Court explained:

> A more difficult question is whether the trial court erred in its determination that a defendant who seeks and obtains the benefits of KRS 31.110(1)(b) [2] may not be represented by retained counsel who declares his [or her] intention to continue on a *pro bono* basis. [The defendant] correctly observes that the statute contains no express prohibition against having the Commonwealth provide "the necessary services and facilities of representation" when the defendant has obtained his [or her] own counsel. Be this as it may, in our view, [the public defender statute] is a unified enactment which contemplates the necessity of a comprehensive determination whether a defendant qualifies for the benefits provided. For it to be determined that he [or she] does, he [or she] must be without the independent means to obtain counsel. The statute surely does not contemplate that a defendant would be indigent for purposes of KRS 31.110(1)(b), but still able to hire an attorney. If such were

---

**2.** Kentucky Rev. Stat. Ann. 31.110(1) provides:

A needy person who is being detained by a law enforcement officer, on suspicion of having committed, or who is under formal charge of having committed, or is being detained under a conviction of, a serious crime ... is entitled:

(a) To be represented by an attorney to the same extent as a person having his [or her] own counsel is so entitled; and

(b) To be provided with the necessary services and facilities of representation including investigation and other preparation. The courts in which the defendant is tried shall waive all costs.

the case, rarely would any defendant step forward to pay investigative costs and other services necessary for his [or her] representation. Indeed, [under the statute] "needy person" or "indigent person" is defined as "a person who at the time his [or her] need is determined is unable to provide for the payment of an attorney and all other necessary expenses of representation." Under this definition and the general tenor of the entire Act, inability to obtain counsel and inability to obtain necessary services must go hand-in-hand.

In an unusual case, however, it may be that an indigent defendant can obtain counsel which is truly *pro bono;* counsel who has neither sought nor obtained any fee or the promise thereof for legal services rendered or promised. In such a circumstance, the dual benefits provided by the Act would indeed be severed. The defendant would be indigent for purposes of necessary services and facilities, but otherwise be able to provide his [or her] own counsel without cost to himself [or herself]. When such a circumstance produces the severance between ability to obtain counsel and need for other necessary expenses, the statute may be interpreted to permit the trial court to grant indigency status for purposes of KRS 31.110(1)(b) only.

*Id.* at 220–21 (footnote added).

Other jurisdictions have also disallowed severance of the public defender's representation from the other services provided by the public defender. *See People v. Cardenas,* 62 P.3d 621, 622–23 (Colo.2002) (holding that defendant represented by a *pro bono* private attorney was not entitled to funding through the public defender's office for the cost of an interpreter to translate out-of-court discussions and that if the "defendant want[ed] the state to pay the costs of . . . supporting services, his [or her] only choice [was] to be represented by the public defender"); *Subin v. Ulmer,* 131 N.M. 350, 36 P.3d 441, 443–44 (2001) (holding that a court could not order the public defender to provide expert witness services to a defendant represented by private counsel when the public defender's office had a policy which required that the defen-

dant first be a client of the public defender before he or she could avail himself or herself of the other services provided by the public defender).

Delaware has taken a slightly more proactive approach by instituting procedures in which a defendant who is initially represented by private counsel can still obtain funding for supporting services. While Delaware generally prohibits the severance of the dual benefits provided for under its public defender statute, defendants represented by private counsel are permitted to obtain funding for a private expert if their private counsel withdraws. The Delaware Supreme Court outlined the following procedure:

> First, a request for public funds to retain an expert witness must be "deemed an application (by private counsel) for leave to withdraw as counsel and for representation thenceforth by the Public Defender on the ground of indigency." Second, the trial court must determine whether the defendant is indigent and thus eligible to receive assistance from the Public Defender under [the public defender statute]. Third, if the trial court finds that the defendant is indigent, the court is instructed to permit the defendant's private counsel to withdraw and to refer the defendant's case to the Public Defender.

*Chao v. State,* 780 A.2d 1060, 1066–67 (Del.2001) (citing *Office of the Public Defender v. Thompson,* 451 A.2d 835, 837 (Del. 1982)).

Also, in situations wherein the defendant has retained a *pro bono* attorney, the Delaware Supreme Court established an additional procedure, permitting *pro bono* private counsel to continue to advocate for the defendant while allowing the defendant to obtain funding from the public defender's office for expert services. It opined:

> In this situation, an indigent defendant represented by private counsel may request that the Superior Court exercise its discretion to allocate funds to pay for expert services if the trial court finds, after a hearing, that (1) the defendant is indigent; (2) private counsel is providing legal

services without charge ("*pro bono publico* private counsel"); (3) it would [be] inappropriate to require *pro bono publico* private counsel to withdraw in favor of the Public Defender; and (4) the services are "necessary for adequate representation" in the circumstances.

*Id.* at 1063.

In contrast to the above jurisdictions, some states draw no distinctions between defendants represented by private counsel and those represented by the public defender. Any ancillary services provided by the public defender are severable from representation by the public defender and, therefore, representation by the public defender is not a prerequisite to obtaining an expert witness or other collateral funding. The only precondition to obtaining funding is a determination that the defendant makes a proper showing of indigency and necessity. *See Jacobson v. Anderson*, 203 Ariz. 543, 57 P.3d 733, 734–35 (2002) (permitting defendants represented by private counsel to declare themselves indigent for purposes of requesting the appointment of an expert witness); *State v. Burns*, 4 P.3d 795, 801–02 (Utah 2000) (holding that, although the ability to hire a private attorney is a factor in determining indigency, it is not the determinative factor and will not necessarily bar a defendant from obtaining a medical expert funded by the public defender's office); *Cain v. State*, 758 So.2d 1257, 1258–59 (Fla.Dist.Ct.App.2000) (allowing a defendant, who was deemed to be "partially indigent" due to his representation by private counsel, to obtain costs for experts); *In re Cannady*, 126 N.J. 486, 600 A.2d 459, 462 (1991) (holding that a defendant represented by private counsel could obtain funding for an expert witness because "Nowhere in the [public defender] Act is there a requirement that a defendant obtain legal services from the [office of the public defender] before he or she may obtain ancillary services from it"); *State ex rel. Rojas v. Wilkes*, 193 W.Va. 206, 455 S.E.2d 575, 577–78 (1995) (opining that retention of private counsel by a third party does not prohibit a defendant from being deemed indigent and qualifying for publicly funded expert assistance); *English v. Missildine*, 311 N.W.2d 292, 293–94 (Iowa 1981) (holding that

representation by private counsel does not affect a defendant's status as an indigent and does not forbid state expenditure of funds for an expert).

We agree with those states which hold that the dual services provided by the public defender are not severable. The language of art. 27A, § 2, defining indigent as a person unable "to provide for the full payment of an attorney and all other necessary expenses of legal representation," is a unified enactment and does not contemplate that a defendant could be indigent for purposes of "all other necessary expenses" and yet able to retain private counsel. *See Morton*, 817 S.W.2d at 220. We adopt Kentucky's position that, "[u]nder this definition and the general tenor of the entire Act, inability to obtain counsel and inability to obtain necessary services go hand in hand." *Id.* Thus, any funding for the necessary services associated with representation are conditioned upon representation by the Public Defender.

In the case *sub judice*, appellant paid to be represented by private counsel and did not seek representation through the public defender. Therefore, appellant is not indigent and is foreclosed from requesting public funding for a DNA expert, either through the Public Defender's Office or the lower court. This is not to say that a defendant who proceeds with private counsel cannot later become indigent, apply for representation with the Public Defender, and avail himself or herself of the benefits of other necessary services such as an expert witness. We hold only that a defendant who pays for and retains private counsel throughout the adjudicatory process cannot be deemed indigent for purposes of obtaining a publically funded expert witness. Additionally, because appellant's counsel was not providing *pro bono* services, we do not express an opinion on whether a defendant with *pro bono* private counsel is entitled to funding for other services associated with representation.[3]

---

3. Having concluded that appellant was not indigent for purposes of Maryland's Public Defender Statute, we could end our analysis here. We will, however, address appellant's additional arguments in order to

## B

■ Appellant argues that the Public Defender and the trial court erred by not complying with the Public Defender Statute. Specifically, he contends that the Public Defender was required under art. 27A to provide funding for an expert witness regardless of whether appellant had retained private counsel. Also, appellant maintains that, after the Public Defender's denial, the trial court was required under art. 27A to make an independent determination of whether he was indigent and thus entitled to funding for an expert at State expense. The trial court failed to make this inquiry, posits appellant, by only determining whether court funds were available, not whether appellant was indigent.

As noted, *supra*, we do not review the actions of the Public Defender but only the judgments of the trial court. Therefore, we need only determine whether the trial court, under art. 27A, erred by not ordering the Public Defender to provide the funding, or in the alternative, by not providing funding through Howard County.

Whether the trial court may order the Public Defender to provide legal representation in the form of either legal counsel or funding is controlled by art. 27A. Art. 27A, § 1, sets out the legislative intent concerning the authority and duties of the Public Defender:

It is hereby declared to be the policy of the State of Maryland to provide for the realization of the constitutional guarantees of counsel in the representation of indigents, including related necessary services and facilities, in criminal and juvenile proceedings with the State, and to assure effective assistance and continuity of counsel to indigent accused taken into custody and indigent defendants in criminal and juvenile proceedings before the courts of the State of Maryland, and *to authorize the Office of Public Defender*

clarify the role of the Public Defender and trial court in the arena of expert witness funding for indigent defendants.

*to administer and assure enforcement of the provisions of this article in accordance with its terms.*

(Emphasis added.)

■ The Office of the Public Defender was established in the executive branch of the government. Md.Code, art. 27A, § 3; *Webster v. State,* 299 Md. 581, 603, 474 A.2d 1305 (1984). Therefore, the question of whether legal representation will be provided by the Office of the Public Defender is left solely to the discretion of the Public Defender. *Thompson v. State,* 284 Md. 113, 128, 394 A.2d 1190 (1978). The Court of Appeals addressed the interaction of a trial court and the Public Defender in *Thompson.* It stated:

The Public Defender wanted to leave it up to the court, making clear that if the courts so ordered he would provide representation. The court refused to so order, properly we believe, on the ground that the question whether the Public Defender represented a particular defendant was for the Public Defender and not for the court.

*Id.*[4]

As a result, in the case *sub judice,* we do not review the circuit court's decision not to order the public defender to provide funding for appellant's expert witness. Therefore, in the context of art. 27A, we need only review whether the trial court was required to provide State funding under art. 27A. As we have explained:

[T]he Court of Appeals seemed to hold that if the Public Defender declines to represent a defendant—even on the grounds of non-eligibility (as opposed to a potential conflict of interest)—the court has no authority to order him to provide representation. Upon that premise, the question before us is not whether the Public Defender erred in declining representation but whether the court was derelict

---

4. *See also Subin,* 36 P.3d at 443–44. In *Subin,* the Court of Appeals of New Mexico, in dealing with a similar issue, held that the trial court did not have constitutional or statutory authority to order the public defender to provide funding, stating that it would "be an unwarranted intrusion into the administrative affairs of another agency." *Id.*

in discharging its own responsibility to assure compliance with appellant's Constitutional right of counsel, in accordance with its authority under § 6(f) of art. 27A.

*Baldwin v. State,* 51 Md.App. 538, 552–53, 444 A.2d 1058 (1982).

The duties and powers of the circuit court under the Public Defender Statute are set forth in art. 27A, § 6(f):

Nothing in this article shall be construed to deprive [the circuit court] ... of its authority to *appoint an attorney* to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article.

(Emphasis added.)

Section 6(f) has been interpreted as requiring that, when the Public Defender declines to provide representation, the court should "make its own independent determination whether a defendant is indigent and otherwise eligible to have counsel provided." *Thompson,* 284 Md. at 129, 394 A.2d 1190. The independent court evaluation necessarily emanates from the judiciary's role as the "ultimate protector" of the indigent's right to counsel. *Davis v. State,* 100 Md.App. 369, 380–81, 641 A.2d 941 (1994); *Baldwin,* 51 Md.App. at 552, 444 A.2d 1058. Section 6(f), however, fully defines the court's power by "specifically limit[ing] the court's authority to appoint an attorney to represent an indigent person" to those instances set forth in § 6(f). *Harris v. State,* 344 Md. 497, 513, 687 A.2d 970 (1997).

In the instant case, the trial court was not authorized under § 6(f), as appellant contends, to provide funding for his expert witness. Section 6(f) deals with the appointment of counsel and not with the court's authority in providing funding for the testimony of an expert defense witness. Additionally, the power delegated under § 6(f) only requires the trial court to

make an independent determination of indigency in instances when the defendant otherwise does not have counsel. Appellant had already obtained private counsel and was represented at trial. Therefore, the trial court was under no obligation to exercise its authority under § 6(f). For these reasons, we hold that the lower court did not err under § 6(f) of the Public Defender Statute by declining to provide funding for appellant's expert DNA witness.

## C

Appellant also maintains that the denial by the Public Defender and the trial court of funding for an expert DNA witness violated his rights to due process of law, equal protection of law, and effective assistance of counsel. As discussed, *supra*, however, we do not directly review the actions of the Public Defender and therefore, we will only address the denial by the trial court. In relation to the actions of the trial court, appellant argues that the lower court was constitutionally required to provide funding for his expert witness. According to appellant, an expert defense witness was necessary in order for him to fully develop a defense in challenging the State's DNA evidence. The lack of an expert, he says, denied him meaningful access to the judicial process as is constitutionally required.

The Court of Appeals addressed the constitutional rights of indigent defendants in the context of funding for expert witnesses in *Johnson v. State*, 292 Md. 405, 439 A.2d 542 (1982). In *Johnson*, an indigent defendant, who was being tried for murder, raised the insanity defense. Although the defendant requested funding for the appointment of a private psychiatrist, the trial court ordered the transfer of the defendant to a State mental hospital for a psychiatric evaluation. The hospital issued a report which stated, in part, that the defendant was "not suffering from a mental disorder which caused him to lack substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law." *Id.* at 410, 439 A.2d 542. The defendant was subsequently tried, convicted, and sentenced to

death. In his appeal, the defendant argued that the "refusal of his request for appointment of a private psychiatrist effectively denied him the rights to the assistance of counsel, due process of law, and the equal protection of law in violation of various State and Federal Constitutional guarantees." *Id.* at 412, 439 A.2d 542.

In addressing the defendant's argument, the Court in *Johnson* opined:

Some courts view the right secured in *Gideon* [*v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) ] as additionally requiring the assistance of experts or investigators when necessary to provide an indigent with the effective assistance of counsel. Other courts, however, hold the view that the Constitution does not create any right to such expert assistance.

. . .

Common sense dictates that there be some limit placed upon the right of indigents to the assistance of State-funded experts. This is not a case where the government has refused to provide psychiatric evaluation of a criminal accused who wishes to interpose an insanity defense, or where the resulting report is withheld from the defendant. Nor has appellant in this case produced evidence challenging the professional competence or impartiality of the psychiatrists at the [State hospital].

. . .

Certainly, in these circumstances the indigent accused is at a disadvantage when compared with the wealthy defendant who possesses unlimited resources for the marshalling of batteries of attorneys, investigators and experts. It cannot be seriously contended, however, that the State must precisely equalize the position of the penurious defendant and the wealthy one. . . . Whatever the amount of required State assistance for the appointment of defense experts to enable the indigent to place the issue of insanity before the trial

court, we need not determine here, for it is certain that once an accused is evaluated by [S]tate[-]funded, impartial and competent psychiatrists, that constitutional duty, if any ends. *"[T]he State has no constitutional obligation to promote a battle between psychiatric experts 'by supplying defense counsel with funds wherewith to hunt around for other experts who may be willing, as witnesses for the defense, to offer the opinion that the accused is criminally insane.'"*

*Id.* at 413–15, 439 A.2d 542 (quoting *Swanson v. State,* 9 Md.App. 594, 601–02, 267 A.2d 270 (1970))(emphasis added; citations omitted).

In the case *sub judice,* the DNA samples collected at the crime scene were tested by an independent laboratory— Cellmark. Although the State contracted with Cellmark to perform the analysis, there is nothing to indicate that Cellmark's evaluation of the samples was not impartial, scientific, and objective. Additionally, appellant's counsel was provided with all the DNA documents and reports generated by Cellmark prior to trial in order to prepare a defense. Thus, the State provided expert analysis and any constitutional duty had ended after that point. This is not a case in which the State obtained a conviction absent any DNA analysis when such evidence was available to possibly exonerate appellant. Cellmark performed a sufficient analysis and, as the *Johnson* Court noted, the State is not obligated to promote a battle between experts. *Id.* at 415, 439 A.2d 542.

Furthermore, the objective nature of DNA analysis lends further support for the reasoning set forth in *Johnson.* In *Johnson,* the Court of Appeals held that the use of one State psychiatric evaluation was sufficient for the defendant's insanity defense in a death penalty case. A psychiatric evaluation, however, is usually considered much more subjective in nature than a DNA analysis. Therefore, appellant's constitutional rights enjoyed more protection than the defendant in *Johnson.* For these reasons, we hold that appellant's constitutional rights were not violated when the trial court refused to provide funding for an additional DNA expert.

Despite the holding of *Johnson*, appellant relies on *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), in advancing the proposition that he is constitutionally entitled to funding for a defense expert. In *Ake*, the U.S. Supreme Court dealt with the rights of an indigent on trial for murder. The primary issue was whether the State was required to fund a psychiatric evaluation of the indigent defendant in preparation of a potential insanity defense. The State had a psychiatrist evaluate the defendant, who concluded that the defendant was dangerous. The State's evaluation, however, did not make a determination with respect to criminal responsibility. The defendant wanted the State to fund an additional psychiatric evaluation as to his sanity at the time of the offense. The trial court denied the defendant's request and the defendant was subsequently convicted and sentenced to death, based in part on the State's uncontradicted conclusion that he was dangerous. On appeal the U.S. Supreme Court held:

We therefore hold that when a defendant demonstrates to the trial judge that his [or her] sanity at the time of the offense is to be a significant factor at trial, the State must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense. *This is not to say, of course, that the indigent defendant has a constitutional right to choose a psychiatrist of his [or her] personal liking or to receive funds to hire his [or her] own.* Our concern is that the indigent defendant have access to a competent psychiatrist for the purpose we have discussed, and as in the case of the provision of counsel we leave to the States the decision on how to implement this right.

*Id.* at 83, 105 S.Ct. 1087.

By implication, appellant suggests that *Ake* overrules *Johnson*. His interpretation is erroneous. In *Ake*, the defendant was not afforded any psychiatric evaluation in regard to criminal responsibility at the time of the murder. Thus, the defendant lacked any means to present an insanity defense. In *Johnson*, by contrast, the defendant had been provided an

evaluation as to criminal responsibility at the time of the murder and therefore had a basis from which to consider the insanity defense. The result of *Johnson* is in compliance with the requirements set forth in *Ake*. The defendant in *Johnson* was given access to a competent psychiatrist who conducted an appropriate examination.

As this Court explained in *Djadi v. State*, 72 Md.App. 223, 230–31, 528 A.2d 502 (1987):

> Appellant argues that *Johnson* is no longer valid, that it has been compromised by *Ake v. Oklahoma*. We do not agree; *Ake* is entirely inapposite.
>
> . . .
>
> None of the doctors had evaluated Ake with respect to criminal responsibility and none had ventured an opinion on that issue. Ake, an indigent, asked the court to arrange for a psychiatric evaluation as to his "sanity at the time of the offense," which the court refused to do. He was therefore left with no psychiatric opinion on that critical issue and, under Oklahoma law, the burden of producing evidence as to his insanity.
>
> . . .
>
> *Ake* does not overrule *Johnson*; indeed it supports *Johnson*. The State [had] fully complied with the requirements of *Ake*.

## II

■ Appellant's final contention is that the trial court erred by refusing to admit character evidence that was intended to show that a separately tried co-defendant had a propensity toward violence. According to appellant, a defendant is permitted to introduce evidence of past crimes, acts, or wrongs of a third party. The prohibition on such evidence, avers appellant, only applies to the defendant on trial and not to other persons. He also argues that the trial court's error was not harmless and thus requests that his conviction be reversed.

At trial, appellant defended, in part, on the theory that Brill was solely responsible for the murder of Mason. In order to support his theory, appellant attempted on two occasions during trial to introduce evidence of Brill's past acts of violence toward women. On both occasions, however, the trial court precluded the evidence. For example, when appellant attempted to introduce evidence that Brill had assaulted his sister, the following colloquy occurred:

[APPELLANT'S COUNSEL]: I see. Isn't it true, ma'am, that your brother, Scott Brill assaulted you?

[THE WITNESS]: No.

[PROSECUTOR]: Objection, Your Honor.

THE COURT: Come up, please.

(Counsel and the defendant approached the bench and the following ensued:)

[PROSECUTOR]: I don't see the relevance (undistinguishable).

[APPELLANT'S COUNSEL]: I think it's relevant. (Undistinguishable) somebody is charged—somebody killed Ashley Mason and they're trying to say that [appellant] killed Ashley Mason and we believe that Scott Brill has assaulted his sister on more than one occasion. I mean Scott Brill (undistinguishable)—

THE COURT: (Undistinguishable.) Therefore the jury could conclude that if the question is whether this defendant assaulted anybody or whether he was a violent person what's the relevance of Scott Brill's—whether or not he assaulted his sister[?]

[APPELLANT'S COUNSEL]: To show that Scott Brill is a violent person who is just as capable as—of—in fact is more capable of killing Ashley Mason.

[PROSECUTOR]: (Undistinguishable) other crimes (undistinguishable) very recently can't show propensity to commit (undistinguishable) crimes being committed.

THE COURT: I'll sustain the objection. I don't think it's
     . . .

Maryland Rule 5–404(b) deals with evidence of other crimes, wrongs, and acts, as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, common scheme or plan, knowledge, identity, or absence of mistake or accident.

Appellant relies on *Sessoms v. State*, 357 Md. 274, 744 A.2d 9 (2000), to support the contention that the evidence of crimes, wrongs, or acts prohibited under Rule 5–404(b) only applies to the defendant and not third parties. In *Sessoms*, the defendant was charged with rape, assault, and other sexual offenses. He defended on the grounds that the alleged rape victim falsely accused him of rape in order to cover for her brother's involvement in the robbery of the defendant and another individual named Pitman. The defendant claimed that he was attacked, rendered unconscious, robbed, and awoke to a rape charge. At trial for the rape, the defendant wanted to introduce evidence of Pitman's robbery by the alleged rape victim's brother in an attempt to build his defense. The trial court excluded the evidence on the grounds that it was impermissible under Rule 5–404(b).

On appeal, the Court of Appeals reversed, holding that the prohibition in Rule 5–404(b) does not apply when a defendant proffers other crimes, wrongs, or acts of a third party in an attempt to exculpate himself or herself. *Id.* at 290–92, 744 A.2d 9. In a survey of other states, the Court of Appeals stated:

Several states have made similar interpretations of their other crimes evidence statutes. [*Colorado v.*] *Flowers*, 644 P.2d [916,] 919 [1982]("The test for admissibility of similar offense evidence introduced by the defendant . . . must (be) decide(d) . . . on a case-by-case basis."); *People v. Bueno*, 626 P.2d 1167, 1170 (Colo.Ct.App.1981) ("When offered by the defendant, evidence of similar transactions is admissible as long as it is relevant to the guilt or innocence of the

accused."); *Commonwealth v. Jewett*, 392 Mass. 558, 563, 467 N.E.2d 155, 158 (1984) ("When a defendant offers exculpatory evidence . . . prejudice ceases to be a factor, and relevance should function as the admissibility standard."); *Garfole*, 76 N.J. at 452–53, 388 A.2d at 591 ("When the defendant is offering (other crimes evidence) exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility, since ordinarily . . . an accused is entitled to advance in his [or her] defense any evidence which may rationally tend to refute his [or her] guilt or buttress his [or her] innocence of the charge made."); *State v. Dreher*, 302 N.J.Super. 408, 456–57, 695 A.2d 672, 695 (App.Div.) ("(O)ther crimes' evidence about a State's witness is often admitted when offered by criminal defendants for exculpatory reasons."), *cert. denied*, 152 N.J. 10, 702 A.2d 349 (1997); *Williams*, 214 N.J.Super. at 20, 518 A.2d at 238 ("It is well established that a defendant may use similar 'other crimes' evidence defensively if in reason it tends, alone or with other evidence, to negate his [or her] guilt of the crime charged against him.")

*Id.* at 290–91, 744 A.2d 9.

The Court of Appeals adopted the reasoning set forth by the other states, stating: "We hold that the same interpretation shall be given to Maryland Rule 5–404(b)." *Id.* at 291, 744 A.2d 9. Applying the rule to the facts in *Sessoms*, the Court held that, "[a]lthough the evidence [defendant] wanted to present did not directly point towards someone else committing the crime, it does provide a theory of the case that attempts to exculpate him." *Id.* The evidence was held to be exculpatory because it would have helped the defendant establish that he was robbed and rendered unconscious and thus unable to rape the alleged victim.

■ The task of determining whether the proffered evidence exculpates the defendant or gives credence to the theory that someone else other than the defendant committed the crime is approached on a case-by-case basis. *Sessoms*,

357 Md. at 290, 743 A.2d 759; *Bueno,* 626 P.2d at 1170; *see also Wilson v. State,* 148 Md.App. 601, 645, 814 A.2d 1 (2002). In the case *sub judice,* the evidence proffered by appellant did not exculpate him, but rather only made it more likely that Brill was involved in the murder of Mason. Evidence of Brill's past assaults on women, even when viewed in conjunction with all the evidence, does not make it less probable that appellant participated in Mason's murder. If appellant offered other crimes evidence that demonstrated his inability to commit the crime at the time, as did the defendant in *Sessoms,* then the evidence would be relevant. Given the facts here, however, evidence of Brill's past assaults on women is not relevant to appellant's guilt or innocence. Therefore, we hold that the trial judge properly sustained the State's objection.

**JUDGMENT OF THE CIRCUIT COURT FOR HOWARD COUNTY AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**